## THE CITY OF ALBANY.[1]

## THE MUNICIPAL.

## NEW YORK & N. S. CO. *v.* MAYOR, ETC., OF NEW YORK.

(*District Court, S. D. New York.* March 28, 1888.)

COLLISION — STEAMERS MEETING — MISUNDERSTANDING SIGNALS — FAILURE TO SLOW AND STOP.

Respondent's tug M. was coming down the East river somewhat on the Brooklyn side, and libelant's steamer C. was going up. A ferry-boat crossed the river between them, which required the M. to sheer a little only towards the New York shore. The C. gave two whistles to the tug, indicating that the latter should pass between her and the ferry-boat, and slowed. She heard no answer, and repeated the signals. She also stopped her engine on perceiving that the tug was still swinging towards the New York shore. The tug had given one blast, and continued at full speed, swinging across the course of the C. until near the moment of the collision. *Held*, that the tug was in fault for not slowing, as required by inspectors' rule 3, on the want of a common understanding; for her continued sheer across the other's bow; and for not reversing sooner; that the C. was without fault, and should recover her damages.

In Admiralty. Libel for damages.

*Owen & Gray*, for libelants.

*H. R. Beekman* and *R. L. Wensley*, for corporation.

BROWN, J. On the 26th of October, 1886, at about 2:30 P. M., as the side-wheel passenger steamer City of Albany, bound for Norwalk, Conn., was going under the East-River bridge, the Catharine-Street ferry-boat Republic was leaving her New York slip just above the bridge, and the City of Albany slowed and stopped to pass astern of her. Soon after the Republic had passed, the respondent's steam-tug Municipal was seen coming down river,—as I find, somewhat on the Brooklyn side of the stream. She also exchanged signals with the Republic to go astern of the latter; and in order to do so, as her pilot testifies, she was obliged to sheer somewhat to the New York shore. The City of Albany thereupon gave a signal of two whistles, indicating that the tug should pass between her and the ferry-boat, and at the same time she slowed. Hearing no answer, and seeing the tug still sheering towards the New York shore, she soon repeated her signal and stopped. They came in collision soon after, about opposite pier 39, not over 300 or 400 feet from the New York shore. The City of Albany, at the time of collision, was heading a little towards the New York shore; and the tug had sheered around so as to head either directly towards the shore or a little up river. Capt. Sherwood of the tug, I must find upon the weight of proof, to be mistaken as to his precise place in the river; he was at least half way across towards the Brooklyn shore, and probably more. The direct testimony of the other witnesses to this effect is confirmed by the fact that

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

he could not have made the turn he did before collision; and by the further fact that, if the tug had been only from a third to half way across the river, scarcely any sheer would have been necessary to enable him to pass astern of the Republic, as Coffey's evidence shows that the Republic was nearly in her slip in Brooklyn at the time of the collision. As the tug was coming nearly straight down river, it is clear that she had the City of Albany considerably on her starboard bow, and the tug was also a considerable distance off the starboard bow of the latter. In that situation, at the time when the vessels first observed each other, and when they were bound to take the proper measures to avoid each other, there was no risk of collision, since the course of each was still well clear of the other,—starboard to starboard. The collision was brought about solely by the long-continued sheer of the tug, until she had changed fully eight points in her course, so as to bring her under the bows of the City of Albany. This was wholly unnecessary, and was bad navigation. The two whistles of the City of Albany first given were heard by the pilot of the tug, it is said, as one only. Conceding that there was no fault in not understanding the first signal of the City of Albany, it was nevertheless very soon plain that she was not maneuvering in accordance with a signal of one whistle. Under the inspector's rule 3, which provides for such a case, it was the duty of the Municipal immediately to bring her speed down to "bare steerage way." In like manner, when no answer was heard by the tug to her first signal to the City of Albany, prudence required her to slow. The tug kept on, however, at full speed, till so near the City of Albany that her engineer did not have time to reverse the engine before collision. The faults of the Municipal, therefore, are these: *First*, for unnecessarily and improperly sheering across the course of the City of Albany; *second*, for not bringing her speed down to steerage way, in accordance with inspectors' rule 3, as soon as it was plain that a common understanding was not had; and, *third*, for not backing sooner than she did. Upon all the evidence, I do not find any fault in the City of Albany. As soon as she saw that her whistles were not responded to, she slowed. Soon after, on repeating them, she stopped and backed. Her previous motion was moderate; and at the collision, though she probably had a little forward motion, to be inferred from the effects on the tug, it must have been small. The tug was easily handled. Her continued sheer could not have been anticipated, contrary to the repeated signals of the City of Albany; and the latter's signals were the proper ones in the situation, and she both stopped and reversed as soon as stopping and reversing could reasonably be supposed requisite. She cannot, therefore, be held in fault. *The Greenpoint*, 31 Fed. Rep. 231. The libelant is entitled to a decree, with costs, and a reference to compute the damages.